El Pueblo *v.* Díaz et al.

Apelación procedente de la Corte de Distrito de Guayama.

No. 434.—Resuelto en noviembre 21, 1912.

Derecho Penal—Conspiración—Jurisdicción de las Cortes de Distrito en Casos de Misdemeanor.—Según lo ha resuelto repetidas veces el Tribunal Supremo, las cortes de distrito tienen jurisdicción original concurrente con las cortes municipales para conocer de casos de *misdemeanor.*

Id.—Investigación Preliminar ante una Corte Municipal—Jurisdicción de las Cortes de Distrito.—Para que una corte de distrito adquiera jurisdic-

ción para conocer de un caso de *misdemeanor*, no es un requisito indispensable el que se haya practicado una investigación preliminar ante un juez municipal o juez de paz, pero aun en el supuesto de que dicho requisito fuera necesario, al contestar los acusados en el caso de autos la acusación, o al hacer las alegaciones que hicieron contra la misma, renunciaron al derecho que hubieran podido tener a que se practicara dicha investigación preliminar ante la corte inferior.

Id.—Traslado de una Causa Criminal a Otro Distrito a Iniciativa del Juez por Considerarse Incapacitado para Conocer del Caso.—De acuerdo con el artículo 171 del Código de Enjuiciamiento Criminal, un juez no tiene facultades para trasladar de su propia iniciativa a otro distrito una causa criminal por considerarse incapacitado para conocer del caso, pues dicho traslado debe hacerse únicamente en virtud de moción del acusado o del Fiscal en los casos previstos por dicho artículo.

Id.—Devolución de una Causa al Distrito de Donde Procede.—En el caso de autos, atendidas las circunstancias del mismo, se resolvió que el Juez de la Corte de Distrito de Ponce, al cual fué erróneamente trasladada esta causa a iniciativa del Juez del Distrito de Guayama, tenía la facultad de devolverla a la Corte de Distrito de Guayama de donde procedía.

Id.—Nombramiento de Jueces Especiales—Facultades del Gobernador.—El Gobernador puede destituir a un juez y nombrar a otro con el consentimiento del Consejo Ejecutivo. Puede también nombrar un juez especial cuando no hay juez propietario, o cuando el juez propietario está incapacitado o ausente, y puede también, bajo ciertas circunstancias, nombrar un juez sustituto, pero no tiene facultades para nombrar un juez especial que conozca de determinada causa, cuando el juez propietario no está incapacitado para conocer de la misma.

Id.—Nombramiento de Juez Propietario—Juez Sustituto.—De acuerdo con la doctrina sentada en el párrafo anterior, se resolvió, que en el caso de autos, desde el día 1°. de septiembre de 1911, en que tomó posesión de su cargo el juez propietario de la Corte de Distrito de Guayama, cesaron las funciones del juez especial que había sido nombrado por el Gobernador para conocer de este caso, y todo lo actuado por dicho juez especial con posterioridad a esa fecha es nulo, porque carecía de jurisdicción para ello.

Los hechos están expresados en la opinión.

Abogados de los apelantes: Sres. *Luis Muñoz Morales, J. Henri Brown, Martín Travieso, Nemesio R. Canales y Luis Llorens Torres.*

Abogado del Pueblo: Sr. *Charles E. Foote, Fiscal.*

El Juez Asociado Sr. MacLeary, emitió la opinión del tribunal.

Se inició este caso en la Corte de Distrito de Guayama, en donde fué presentada una acusación el día 17 de abril, 1911, imputando a los acusados Pastor Díaz, Luis Abella,

Pedro G. Goico, y José C. Ramos, la comisión de un delito de conspiración. El día 21 de abril, 1911, se dió lectura de la acusación a los acusados ante la corte, solicitando éstos una prórroga para hacer sus alegaciones, la que les fué concedida. En 2 de mayo, 1911, los acusados Goico y Díaz comparecieron, negaron su culpabilidad y solicitaron un juicio por jurado; Abella compareció y formuló una alegación a la jurisdicción de la corte, y Ramos hizo su alegación de no culpable y presentó una moción para que se le juzgara por separado, cuya moción iba acompañada de una declaración jurada. El día 4 de mayo, 1911, Harry P. Leake, Esq., Juez especial de la Corte de Distrito de Guayama, ordenó el traslado de esta causa a la Corte de Distrito de Ponce, por el fundamento de que el había tomado parte en las investigaciones prelimi- nares, "y por otras razones suficientes" (según se expresan en la orden), que le incapacitaban para conocer del caso, remitiendo dicha causa con todos los documentos que exis- tían, a la Corte de Distrito de Ponce. El día 6 de mayo de 1911 el Hon. Charles E. Foote, Juez de la Corte de Distrito de Ponce, fué nombrado por el Gobernador de Puerto Rico, juez especial para conocer de este caso, cuyo nombramiento es como sigue:

"Mayo 6, 1911. Hon. Charles E. Foote, Juez de Distrito. Señor: Por virtud de la autoridad que me confiere el artículo 2 de la Ley de marzo 10, 1904, reorganizando el sistema judicial y por la reco- mendación del Attorney General, se le autoriza y ordena por la pre- sente, que cumpla con los deberes correspondientes al Juez de Dis- trito de Guayama, en el juicio y resolución de una causa criminal seguida en dicha Corte de Distrito de Guayama contra José C. Ramos, Luis Abella Blanco, Pastor Díaz y Pedro Goico, en cuyo caso se imputa a dichos acusados el delito de conspiración. Según Vd. tal vez sabe, el Juez Leake se considera incapacitado para juzgar este caso, debido a la relación que tuvo con el mismo anteriormente. George R. Colton, Gobernador."

Tomando en consideración el juez especial, la moción presentada por el Fiscal, negó en 10 de mayo la solicitud que

fué presentada para juzgar por separado a uno de los acusados. En 15 de junio todos los acusados presentaron escritos en la Corte de Distrito de Ponce sometiéndose de modo expreso a la jurisdicción de aquella corte. El día 13 de junio, Abella presentó una moción a la Corte de Distrito de Ponce, solicitando que se le relevara de dicha sumisión a la jurisdicción de dicha corte, y pidiendo el traslado del caso a la Corte de Distrito de Guayama, lo que así se dispuso, remitiéndose de nuevo dicho caso a la dicha Corte de Distrito de Guayama. En 12 de septiembre se presentaron varias mociones en la Corte de Distrito de Guayama, atacando la jurisdicción de la corte por fundamentos que se expresarán más adelante, habiéndose desestimado todas dichas mociones. Todas las partes anunciaron entonces estar listas para juicio, el que se siguió en la forma ordinaria, que dió por resultado que los acusados fueran declarados culpables, condenándose a Ramos a seis meses y los demás a un año de prisión cada uno. Contra esta sentencia se interpuso la debida apelación y el caso está ahora sometido a nuestra consideración.

La primera cuestión que ha de tomarse en consideración al resolver este caso es la relativa a la jurisdicción. Esta cuestión se promovió en el señalamiento de errores en el *segundo, tercero,* y *cuarto* señalamientos, en los que se alega que la corte sentenciadora cometió los siguientes errores, a saber:

"A. Al desestimar la moción fundada en la falta de jurisdicción de la Corte de Distrito de Guayama, para conocer de una acusación por *misdemeanor* que se originó en dicha corte.

"B. Al negar la moción relativa a la jurisdicción de la Corte de Distrito de Guayama, fundada en el hecho de que la Corte de Distrito de Ponce tenía jurisdicción y que el traslado de la causa a la Corte de Distrito de Guayama era ilegal.

"C. Al negar la moción solicitando que el juez especial Hon. Charles E. Foote, sea declarado sin facultad para conocer de esta causa, y que el juicio debió haberse celebrado ante el Hon. H. M. Hutchison, que es el juez propietario de la Corte de Distrito de Guayama.

"D. Al negar la moción en la que se solicitaba de la corte de que se declarara sin jurisdicción por no haberse llevado a efecto el examen preliminar o audiencia ante el juez municipal o juez de paz y porque ninguna denuncia jurada contra el acusado se había presentado en esta causa."

Con el fin de hacer un examen más riguroso y un estudio más cuidadoso, analizaremos estas proposiciones y las dividiremos en seis, especificando las cuestiones propuestas de un modo más específico. Por tanto, podemos expresar que estos señalamientos de error presentan las siguientes cuestiones:

"1. ¿Tiene alguna corte de distrito jurisdicción original para conocer de una causa por *misdemeanor*?

"2. Si la corte de distrito tiene jurisdicción ¿es necesario que haya habido primeramente un examen preliminar o vista ante el juez municipal o juez de paz, con anterioridad al comienzo del juicio en la corte de distrito?

"3. ¿Era la Corte de Distrito de Ponce la que debidamente tenía jurisdicción para conocer de este caso, después del traslado de la causa a esa corte por orden del juez especial, Harry P. Leake, Esq.?

"4. ¿Tenía jurisdicción para conocer de este caso la Corte de Distrito de Guayama, después que el mismo había sido trasladado nuevamente a dicha corte por orden del Hon. Charles E. Foote, Juez de la Corte de Distrito de Ponce?

"5. ¿Tenía jurisdicción el juez propietario, Hon. H. M. Hutchison para conocer de esta causa, no hallándose incapacitado en manera alguna, después de haber tomado posesión como juez de distrito en 1°. de septiembre de 1911?

"6. ¿Cesó en su nombramiento el Hon. Charles E. Foote, como juez especial para conocer de este caso, cuando el juez especial, Harry P. Leake, Esq., concluyó en su cargo y fué nombrado un juez en la Corte de Distrito de Guayama, que no tenía ninguna incapacidad?"

Consideraremos estas cuestiones por el orden indicado y las discutiremos tratando de fijar la jurisdicción antes de entrar a considerar los otros méritos del caso. Desde luego, si aparece que la corte no tiene jurisdicción, no habrá necesidad de seguir examinando los autos.

Nos ocuparemos en primer lugar del asunto relativo a las cuestiones hasta ahora enumeradas 1 y 2, que se refieren a la jurisdicción de la corte de distrito en casos de *misdemeanors* y a la necesidad de un examen preliminar en una corte de investigaciones.

Hemos resuelto repetidas veces que las cortes de distrito de la Isla tienen jurisdicción original concurrente con las cortes municipales para conocer de casos de *misdemeanor,* a pesar de la Ley Judicial enmendada de fecha 10 de marzo de 1904, y de la Sección IV de la misma, que ha sido citada por los apelantes en apoyo de su alegación.

La cuestión fué ampliamente discutida citándose autoridades en el caso de *El Pueblo* v. *Adorno* que se encuentra anotado en el tomo 17 de las Decisiones de Puerto Rico, en las páginas 1102 y siguientes. La opinión en ese caso es amplia y completa y resuelve esta cuestión de modo tal que no hay que volver a considerarla. Esa opinión también ha sido aprobada en un caso subsiguiente que se titula *El Pueblo de Puerto Rico* v. *Ortiz y otros,* 17 D. P. R., 1196.

La ley reorganizando el sistema judicial de esta Isla aprobada en 10 de marzo de 1904, en su sección cuarta, según correctamente se ha alegado, confiere jurisdicción a las cortes municipales "en todos los casos criminales excepto en los de *felonies;*" pero según aparece de los casos citados, y quizás de otros, se ha resuelto repetidas veces por este tribunal que ésta no es una jurisdicción exclusiva, continuando las cortes de distrito con jurisdicción concurrente en tales casos.

Tampoco es necesario para que la corte de distrito tenga jurisdicción de una causa, que haya habido un examen preliminar o vista anterior en presencia del juez municipal o juez de paz. Esa no ha sido jamás la práctica en esta isla, y se ve interpretando debidamente el estatuto que no exige tal cosa, pero aun cuando fuera necesario en este caso determinado, el hecho de que los acusados formularon su contestación e hicieron alegaciones en contra de la acusación

constituye una renuncia del derecho que hayan podido tener con respecto al examen preliminar en la corte inferior. Este principio ha sido resuelto en los casos siguientes: *State v. Caulfield,* 23 La. Ann., 148; *People v. Williams,* 93 Mich., 623; *State v. Spencer,* 49 Pac., 302. Por tanto podemos considerar la cuestión de jurisdicción sobre la materia en este caso como que ha sido resuelta adversamente para el apelante. Por consiguiente debemos declarar que la corte de distrito tenía completa jurisdicción de este caso y podía juzgar y resolver el mismo.

La siguiente cuestión que debemos considerar en contestación a la tercera cuestión a que se ha hecho referencia es la que se refiere al estado del caso después de su traslado a la Corte de Distrito de Ponce por orden del juez especial, según se expresa en la tercera cuestión que ha sido propuesta. Para que un traslado sea legal debe estar autorizado por la ley, y en vano buscaremos en nuestro Código de Enjuiciamiento Criminal ningún motivo en que se pueda fundar la orden dictada remitiendo esta causa de Guayama a Ponce. El Juez Leake no tenía facultad con arreglo a las leyes estatutorias de Puerto Rico para hacer la orden que dictó, trasladando esta causa a la Corte de Distrito de Ponce. El capítulo 5°. de nuestro Código de Enjuiciamiento Criminal dispone la forma en que ha de hacerse el traslado de una causa criminal de una corte a otra. Pero dicho traslado debe hacerse mediante solicitud del acusado o del Fiscal. (Art. 171, Código de Enjuiciamiento Criminal.) En el primer caso dicha solicitud se funda en el motivo de que un juicio rápido e imparcial no puede obtenerse en el distrito en que pende la acción. Y en el segundo caso debe fundarse en el hecho de que no puede obtenerse un jurado en el distrito. El Fiscal no debió haber solicitado un traslado en este caso, pues, siendo un *misdemeanor* no podía pedirse un jurado.

Este estatuto nuestro, artículo 171 del Código de Enjuiciamiento Criminal es muy semejante al 1033 del Código

Penal de California que ha sido interpretado por la Corte
Suprema de aquel Estado en el caso de *People* v. *McGar-
vey*, 56 Cal., 329.   Debe notarse que este caso fué trasladado
por el Juez Leake a moción propia, porque él mismo se
declaró incapacitado.   La corte de California expresa en el
caso que acaba de citarse, que éste no es un fundamento para
hacer un traslado, puesto que otro juez puede ser enviado
al debido distrito para conocer de la causa cuando ocurra
algún motivo de incapacidad.   Esto fué realmente lo que
se hizo en el presente caso, corrigiéndose así en parte el
error en que había incurrido el Juez Leake, y aun cuando el
caso aparecía indebidamente en el calendario de la Corte de
Distrito de Ponce, el juez de aquella corte pudo devolverlo
a la corte de distrito de donde el mismo procedía para ser
allí juzgado debidamente.

Pasaremos a considerar las circunstancias de este caso
después que fué trasladado nuevamente a la Corte de Distrito
de Guayama, según se determina en la cuarta cuestión a
que se ha hecho referencia.   La orden dictada por el Juez
Leake que actuaba como juez de distrito de Guayama tras-
ladando este caso a la Corte de Distrito de Ponce fué consi-
derada por el Gobernador como nula al nombrar al Juez
Foote, juez especial, para conocer de este caso, lo que por
sí exigía que el caso fuera trasladado de nuevo a la Corte de
Distrito de Guayama.   El Juez Leake no tenía facultad para
actuar por su propia moción, puesto que ninguna le había
sido conferida por las leyes de Puerto Rico; y si tenía facul-
tad para actuar, las razones expresadas por él en su orden
no fueron suficientes, no estando reconocidas por las leyes
estatutorias de esta Isla.   La orden dictada por él el día
4 de mayo de 1911, fué nula y el juez no tenía más que hacer
sino trasladar nuevamente el caso a la Corte de Distrito
de Guayama como así lo hizo debida y prontamente, de
acuerdo con la ley.

La próxima cuestión que consideraremos es el efecto que

tuvo el nombramiento del juez de distrito propietario en substitución del juez de.distrito interino en el distrito de Guayama, en el estado de esta causa, que se encontraba entonces en el calendario de dicha corte, según la cuestión propuesta en el párrafo 5 del examen que hasta ahora hemos hechos de estas cuestiones.

Examinemos primeramente la cuestión propuesta por el Fiscal para combatir esta objeción a que siguiera conociendo de la causa el juez especial. En contestación a la objeción de que nadie sino únicamente el Juez Hutchison estaba capacitado para conocer del caso, alega el Fiscal, que al comparecer los acusados y presentar, bien una solicitud sobre separación de la causa u otras objeciones que formularon en el juicio, renunciaron todas las cuestiones referentes a jurisdicción, y nos cita especialmente el caso de *Oakland* v. *Hart,* 129 Cal., 98, 102 y 103, que hemos examinado. Debe notarse que la moción sobre separación de la causa, etc., iba dirigida a la Corte de Distrito de Guayama. En esa fecha el Juez Foote era un juez *de facto* y si el juicio se hubiera celebrado ante él, con anterioridad a la fecha en que tomó posesión el Juez Hutchison, podría tal vez ser válida la objeción. Es cierto que antes de promoverse la objeción específica que hizo Pastor Díaz, algunos de los acusados formularon otras objeciones durante el juicio; pero en lo que respecta al propio Pastor Díaz fué ésa la primera medida que tomó en el juicio. Podría considerarse que todas las objeciones formuladas a la jurisdicción así como otras mociones preliminares fueron presentadas al mismo tiempo. Las objeciones a que se refiere el Fiscal fueron hechas todas en el mismo día. Uno de los fundamentos de objeción por parte de Pastor Díaz es que el motivo que hubo para el nombramiento del Juez Foote como juez especial, había cesado, siendo el Juez Hutchison el debido juez de la corte de distrito, y que la razón de incapacidad que había existido en el Juez Leake no la había en el caso del Juez Hutchison, cuyo

juez, según hemos visto, tomó posesión en 1°. de septiembre.
La primera medida que se adoptó después de esa fecha fué
llamar a juicio esta causa el día 12 de septiembre.  En nin-
guna fecha anterior pudo habèrse formulado objeción alguna
a la jurisdicción del juez especial fundada en el hecho de ser
el Juez Hutchison el debido juez para conocer del caso.
Puede ser que todo lo actuado ante el Juez Foote hasta
el día 1°. de septiembre se hubiera hecho en debida forma.
El solamente resolvió algunas mociones preliminares.  Aun-
que hasta entonces los acusados habían formulado algunas
objeciones a la jurisdicción de la corte de Guayama, pudieron
creer que serían juzgados ante el Juez de Distrito de Gua-
yama, cualquiera que éste fuera.  El juez especial desestimó
la moción expresando como motivos de su desestimación, que
el Gobernador tenía facultad para trasladar a un juez de un
distrito a otro y también podía nombrar a un juez para que co-
nociera especialmente de una causa.  Esta no es la ley.  El
Gobernador puede cambiar a un juez y nombrar a otro con el
consentimiento del Consejo Ejecutivo.  Puede nombrar un
juez especial donde no hay juez propietario o donde el juez
propietario está incapacitado o ausente; y puede, bajo ciertas
circunstancias, nombrar un juez sustituto, pero no tiene
facultad para nombrar un juez especial que presida un de-
terminado caso cuando el juez propietario no está incapa-
citado para conocer de dicho caso.  Después de día 1°. de
septiembre de 1911, según alega Pastor Díaz, el Juez Foote
dejó de tener facultad o jurisdicción en la Corte de Distrito
de Guayama.  Pastor Díaz no hizo ninguna renuncia de
modo directo, y la objeción que formuló a la jurisdicción la
presentó dentro de tiempo, y siendo la misma aplicable a
todos los acusados, debió haber sido declarada con lugar.

Desde luego la jurisdicción para conocer de una causa
criminal que se encuentra pendiente, está conferida a alguna
corte y no a un juez como tal funcionario, y después que
este caso fué devuelto a Guayama, la jurisdicción para

conocer del mismo, la tenía la corte de distrito de ese distrito, puesto que la orden de traslado a Ponce era nula. Por tanto cuando el Juez Hutchison tomó posesión de su cargo el día 1°. de septiembre, encontrando que el caso estaba pendiente en su calendario y no estando dicho juez incapacitado, debió haber procedido a juzgar el mismo. El nombramiento del juez especial había expirado junto con las circunstancias que dieron origen a dicho nombramiento.

Con respecto a la sexta cuestión, quedan algunas palabras que expresar. No aparece que se hayan dictado órdenes algunas en este caso por el Juez Foote como juez especial, después que dicha causa fué trasladada nuevamente a Guayama, hasta el mes de septiembre; y en el ínterin el Juez Leake, como juez interino de ese distrito, había cesado en su cargo, habiendo sido el Juez Hutchison recientemente nombrado y aprobado su nombramiento por el Consejo Ejecutivo, y comenzado aquél a desempeñar sus funciones el día 1°. de dicho mes de septiembre de 1911, según el conocimiento judicial que tiene esta corte. Entonces se presentó una moción ante el Juez Foote para que se inhibiera en la consideración de esta causa con el fin de que la misma fuera resuelta por el juez propietario. Por tanto, suponiendo que los procedimientos en este caso fueron completamente regulares y legales en todos sus particulares, después que el Juez Leake cesó en su cargo y el Juez Hutchison fué debidamente nombrado, confirmado y tomó posesión de su cargo en primero de septiembre de 1911, y de haber sido devuelto el caso a los archivos y al calendario do la Corte de Distrito de Guayama, la incapacidad del juez regular dejó de existir, puesto que el Juez Hutchison estaba debidamente capacitado, no habiendo entonces ninguna necesidad de que continuara el juez especial conociendo del caso; y al ser presentada una moción con tal fin, debió haberse retirado del caso para que el juicio tuviera lugar ante el juez propietario de dicha corte.

Por las razones que hasta ahora se han indicado en esta

discusión, nos parece claro que después del primero de septiembre de 1911, el juez especial nombrado para conocer de esta causa no tenía facultad alguna de acuerdo con el nombramiento del Gobernador para seguir conociendo del juicio, sino que el caso permaneció en el calendario de la Corte de Distrito de Guayama para ser resuelto por el juez propietario que tomó posesión, y empezó a desempeñar sus deberes en la última fecha mencionada. Por consiguiente, habiéndose celebrado este juicio ante un juez cuya facultad había sido reemplazada y que ya no tenía jurisdicción legal para dictar una orden, sentencia, o tomar alguna acción en dicha causa, carecía de facultad para dictar la sentencia que dictó en 12 de septiembre de 1911, la que debe ser revocada, y devolverse la causa a la referida corte de distrito para que conozca de la misma de acuerdo con la ley, según ha sido establecida en esta opinión.

*Revocada y devuelto el caso a la corte inferior*
*para ulteriores procedimientos.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.