EL PUEBLO DE PUERTO RICO a instancias de EUGENIO PADILLA Ríos, TOMÁS ORAMA LÓPEZ, PABLO CORONADO LARRACUENTA, JOSÉ FRONTERA MARISTANY, MODESTO RIVERA DOMEFUCH, FRANCISCO MARTÍNEZ RODRÍGUEZ, FELIPE NERY QUIÑONES Y JOSÉ CASTA FORNÉS, peticionarios y apelantes, *v.* JOAQUÍN OMS SULSONA, ALFREDO LÓPEZ LÓPEZ, MATEO S. RIVERA, JUAN MIRÓ BARNESET, JUAN S. MARTÍNEZ, JOAQUÍN GONZÁLEZ RÍOS, SIMÓN SIMONETTI y PABLO TORRELLAS, demandados y apelados.

No. 3674.—*Visto:* Junio 24, 1925.    *Resuelto:* Julio 10, 1925.

1. ELECCIONES—IMPUGNACIÓN—REMEDIO DE PERSONA AGRAVIADA POR UNA ELECCIÓN.—Cometido un fraude electoral en alguna parte de la Isla el remedio adecuado está a la disposición de la persona agraviada; cometido fuera de San Juan, el perjudicado tiene el remedio adicional de establecer un recurso de *certiorari* en San Juan.

2. ELECCIONES—IMPUGNACIÓN—REVISIÓN POR CERTIORARI Y SU ALCANCE.—El remedio de *certiorari* prescrito por el artículo 89 de la Ley Electoral no está limitado a un examen de la documentación oficial.

3. ELECCIONES—IMPUGNACIÓN—TÉRMINO—FECHA EN QUE EMPIEZA A CORRER.—El término de 15 días prescrito por el artículo 89 de la Ley Electoral empieza a correr desde la publicación del resultado del escrutinio y no desde la fecha de la elección.

4. ELECCIONES—IMPUGNACIÓN—CARÁCTER DEL REMEDIO—CERTIORARI.—El remedio de *certiorari* conferido por el artículo 89 de la Ley Electoral es meramente acumulativo al de *quo warranto* y otros de la ley común o estatutorios no incompatibles con dicho estatuto especial.

5. ELECCIONES—IMPUGNACIÓN—REVISIÓN POR "QUO WARRANTO"—SU PROCEDEN-

cia.—El derecho a revisar unas elecciones por *quo warranto* queda suprimido a menos que el nombramiento de un interesado siga inmediatamente a la publicación del resultado de la elección de modo que pueda ejercitarse el remedio dentro del término prescrito por la ley.

6. Apelación y Error.—Revisión—Presunción—Forma en que está Constituida la Corte—Juez Especial Indebidamente Nombrado.—A falta en los autos de impugnación hecha en la corte inferior, el juez especial nombrado so color de autoridad es un juez *de facto*, y a falta de prueba en dichos autos de que no había necesidad para su nombramiento, la actuación del Gobernador al nombrarlo se presume hecha regularmente.

Sentencia de *Charles E. Foote*, J. (Mayagüez), declarando con lugar moción para eliminar y anulando el auto de *quo warranto* expedido, con costas. *Confirmada.*

*Benet & Souffront y Figueroa del Rosario*, abogados de los apelantes; *Luis Muñoz Morales y Angel A. Vázquez*, abogados de los apelados.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

El Pueblo de Puerto Rico, a instancias de Eugenio Padilla Ríos y otros, estableció este auto de *quo warranto*. Se alegaron fraudes toda vez que en las elecciones del Pueblo de Maricao se depositaron papeletas en la urna que nunca fueron votadas por ciudadanos, varios resultados quedaron alterados y hasta personas imaginarias aparecieron en las listas de votantes. Si uno examina la petición se ve que todos estos abusos fueron cometidos violenta y abiertamente, de modo que fué prácticamente un asunto público, de ser cierto, que estos fraudes electorales habían sido cometidos. La acción se inició en 17 de febrero de 1925.

El juez que conoció del caso anuló el auto porque creyó, y su resolución se señala como error, que el remedio conferido por la Ley Electoral era exclusivo. Esta prescribe lo siguiente (Leyes de 1924, pág. 35):

"Que el resultado del escrutinio de unas elecciones, según se declarare por la Junta Insular de Elecciones y publicare por el Superintendente General de Elecciones, será definitivo, a menos que fuere impugnado por certiorari u otro procedimiento legal autorizado, que se interponga dentro de quince días después de la fecha de la publicación del resultado de ese escrutinio ante una corte de

competente jurisdicción, y por la presente se autoriza en esos casos el procedimiento de certiorari en la corte de distrito de San Juan.''

[1] Cuando se comete un fraude en cualquier parte de la Isla la persona perjudicada tiene el remedio apropiado a su alcance. Si se comete fuera de San Juan la persona agraviada tiene el remedio adicional de poder establecer un recurso de *certiorari* en San Juan, donde la Junta Insular de Elecciones reside, el Superintendente tiene su oficina y donde, como es de presumirse, las papeletas electorales son conservadas.

[2] El procedimiento de *certiorari* de referencia, aunque debido al uso del nombre puede tener alguna de las características de un auto clásico de *certiorari,* no está limitado a un examen de la documentación oficial. Las protestas, los *affidavits* presentados ante la junta y posiblemente alguna prueba *aliunde,* especialmente si ha sido descubierta recientemente, podrían ser revisados en un procedimiento de *certiorari.* La idea de la legislatura fué proveer un auto para la corrección de los abusos electorales, y lo mismo que en la Ley Municipal y la Ley de Compensaciones a Obreros, la legislatura ha conferido un remedio. El limitarlo a la documentación oficial haría el auto en algunos casos completamente ilusorio.

[3] La próxima cosa que ha de tenerse en cuenta es que una persona agraviada no está limitada a un término de quince días a contar de la fecha de la elección. El período comienza a correr desde la publicación del resultado del escrutinio, que siempre es algunos días posteriores a la fecha de la elección. Tal vez podemos tomar conocimiento judicial de que en las elecciones de 1924 la junta se constituyó y el resultado fué anunciado algún tiempo después.

[4] Las partes nos han citado muy pocos casos de verdadero peso. La ley parece estar muy bien resumida en el tomo 20 de Corpus Juris, pág. 213, sec. 271, tit. ''Elecciones'':

'   "b.  Carácter Exclusivo del Remedio.—Existe algún conflicto aparente entre los casos respecto a si, cuando el estatuto prescribe una forma específica para impugnar las elecciones, ese modo es exclusivo de o acumulativo del remedio de la ley común de *quo warranto,* aunque esta aparente falta de armonía judicial puede generalmente explicarse por la diferencia en los estatutos de acuerdo con los cuales las decisiones fueron dictadas.  Hay muchos casos en los cuales se dice que el remedio estatutorio es exclusivo y el remedio de la ley común de *quo warranto* no será tenido en cuenta excepto en casos especiales donde aparece que los intereses públicos exigen que el auto sea expedido.  A pesar de los numerosos casos que aparentemente sostienen el criterio de que el remedio estatutorio es exclusivo, parece ser la mejor opinión que a menos que la intención del poder que establece la ley de privar a la corte de su jurisdicción resulte claramente, el remedio estatutorio especial es meramente acumulativo del remedio de *quo warranto* y de otros remedios de la ley común, o estatutorios que no son incompatibles con el estatuto especial.  Y aunque se ha resuelto que el *quo warranto* está sustituído por los procedimientos estatutorios para impugnar elecciones las cortes conocerán del *quo warranto* en aquellos casos en los cuales el remedio estatutorio es inaplicable o insuficiente.  El uso del *quo warranto* para investigar la validez de una elección a un cargo público no está limitado por disposiciones estatutorias para el escrutinio de papeletas y declarar el resultado de una elección.  Se ha resuelto que cuando por el estatuto se prescribe un remedio especial en el caso de una elección impugnada las cortes no intervendrán mediante *injunction* ni siquiera para evitar la perpetración de un fraude, aunque se reconoce el deber de las cortes bajo tales circunstancias de intervenir por *injunction* mandatorio para obligar al tribunal estatutorio especial que tiene jurisdicción de la impugnación a que actúe si deja o rehusa hacerlo sin una buena causa; y se ha sostenido que la corte intervendrá cuando la legislatura carecía de facultad para nombrar al tribunal especial que ha de celebrar la vista de la impugnación.  De modo que cuando una elección es nula por su faz por dejarse de adoptar las medidas jurisdiccionales necesarias, procederá el *injunction* no obstante existir un remedio estatutorio para impugnar las elecciones.  Pero la corte no resolverá los derechos de los candidatos en procedimientos de *mandamus* contra los agentes electorales, ni hará una investigación de las cuestiones en disputa por las vías ordinarias de los procedimientos legales o de equidad.  La ley general que regula las impugnaciones de elecciones es aplicable a las impugnaciones entre candida-

tos en una elección y no a las contiendas relativas al título a un cargo donde una de las partes reclama su derecho por nombramiento del ejecutivo y la otra por elección del pueblo.''

[5] En Puerto Rico la legislatura misma ha dicho que el remedio será ejercitado dentro de quince días a contar de la publicación del resultado de la elección y que de otro modo la publicación es final. Esto limita el derecho de una persona agraviada si su caso no cae dentro de algunas de las excepciones enumeradas. El derecho a revisión por *quo warranto* queda, por tanto, generalmente suprimido a menos que el nombramiento de un interesado siga inmediatamente a la publicación. Un ejemplo explicará lo que queremos decir. Si la publicación fué demorada hasta enero y la toma de posesión tuviera lugar al día siguiente entonces la parte agraviada podía presentar un *quo warranto* dentro de catorce días siendo estos catorce, quince días a contar de la fecha de la publicación.

El límite del tiempo parece ser adecuado como hemos indicado. La idea de la legislatura fué poner fin a las impugnaciones después de haberse dado un término razonable para solicitar un remedio. Por tanto no es necesario resolver la naturaleza del auto de *quo warranto* en general. No hubo ningún derecho a tal auto en febrero 17 de 1925, considerando nuestra ley especial. Ni podemos siquiera suponer consistentemente que tal derecho pudo todavía haber existido quince días después de la toma de posesión, teniendo lugar esta última tanto tiempo después de la publicación.

[6] El apelante también señala como error que el juez especial que conoció del caso no estaba debidamente nombrado y que no existía ninguna emergencia para que actuara como tal. Los autos no revelan que esta cuestión fuera promovida en la corte inferior, lo cual es una razón suficiente para que no resolvamos que la corte inferior incurrió en error.

A falta de la debida impugnación el juez especial, nombrado so color de autoridad era un juez *de facto*. En el

caso citado de *El Pueblo* v. *Díaz*, 18 D.P.R. 912, se demostró que el juez regular estaba allí, que se hizo la impugnación y no procedía la recusación de un juez *de facto*.

Además, convenimos con el apelado en que los autos no revelan que no hubo necesidad para nombrar un juez *de facto*. A falta de prueba en contrario la actuación del Gobernador al nombrar un juez especial se presumiría que fué hecha regularmente. Las siguientes presunciones de la Ley de Evidencia parecen tener aplicación. Art. 102, pár. 14: Que una persona en posesión de un cargo público fué elegida o nombrada para dicho cargo, en debida forma; art. 102, pár. 32: que la ley ha sido acatada.

*Debe confirmarse la sentencia.*