Rafael Diez de Andino, Román Díaz Collazo, Ramón Lloveras Soler, Arturo Díaz Cintrón, Enrique Aquino, Juan Marchán Sicardó, Eduardo López Tizol, Leandro López de la Rosa y Eugenio Delgado, peticionarios y apelantes, *v.* Junta Permanente o Junta Insular de Elecciones, compuesta de E. W. Keith, Presidente y Superintendente General de Elecciones, Francisco L. Amadeo, José Martínez Dávila y Bolívar Pagán, demandados y apelados.

No. 3690.—*Visto:* Enero 19, 1926. *Resuelto:* Febrero 25, 1926.

1. Elecciones— Papeletas Electorales (*Ballots*)— Candidato para un Cargo por Dos o Más Partidos—Marcas Dobles o en Conflicto y Efecto.—El derecho a incluir—según el disponiéndose del artículo 40 de la Ley Electoral como fué enmendada en 1924 (p. 43)—el mismo nombre de un candidato en dos *tickets* diferentes no quiere decir que un votante puede elegir, en una sola papeleta, dos *tickets* distintos, pues la doble papeleta es nula de acuerdo con el artículo 63 (*a*) de la Ley Electoral.

2. Elecciones—Impugnación—Revisión por Certiorari y su Alcance—Actos Ejecutados Ante la Junta Insular.—Por el *certiorari* como regla general, sólo pueden revisarse los actos ejecutados ante la Junta Insular de Elecciones; la prueba testifical podría ofrecerse para aclarar lo que en realidad había tenido lugar ante la junta.

3. Elecciones—Impugnación—Revisión por Certiorari y su Alcance—Actuaciones de la Junta Insular—Apertura de Papeletas.—La actuación de la Junta Insular al negarse a abrir papeletas emitidas en ciertos precintos es cuestión dentro de su sana discreción, y a falta de algo que indique haberse cometido una irregularidad la discreción de la junta al no abrir dichas papeletas no puede ser revisada por *certiorari*.

4. Elecciones—Acto de Contar los Votos, Resultados y Escrutinio—Escrutinio General—Recuento de Votos—En General.—La mera petición a la Junta Insular, de un candidato vencido en unas elecciones de que todas las papeletas en un precinto sean examinadas no es suficiente para que la junta actúe en tal sentido.

Sentencia de *Charles E. Foote,* J. (Primer Distrito, San Juan), declarando sin lugar la petición de certiorari, sin costas. *Confirmada.*

*L. Muñoz Morales,* abogado de los apelantes; *Hon. Attorney General, R. H. Todd Jr., R. Martínez Nadal, Bolívar Pagán, Carlos Llauger,* abogados de los apelados.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Esta fué una acción de *certiorari* por la cual los demandantes trataron de enmendar o variar el resultado de la elección verificada en noviembre de 1924, en y para el municipio de San Juan. La acción fué establecida a principios de enero, 1925. La corte inferior eliminó algunas alegaciones de la petición y finalmente dictó sentencia declarando sin lugar la demanda en 22 de enero de 1925. En el ínterin los funcionarios municipales tomaron posesión y estaban desempeñando sus cargos, cuando en enero 19, 1926, o sea, más de un año de la radicación de la petición, el caso fué sometido para revisión por esta corte.

Dada la importancia de este procedimiento por sus resultados para la comunidad de San Juan, para los partidos políticos que tomaron parte en las elecciones celebradas en noviembre de 1924 disputándose el gobierno municipal de esta ciudad y principalmente para los demandantes, parece natural que éstos tramitasen con urgencia su recurso pero no ha sido así, pues interpuesta su apelación el 22 de enero de 1925 su vista no ha podido tener lugar hasta un año después por las prórrogas por ellos solicitadas.

Examinado el alegato que nos han presentado para sostener su apelación encontramos que no contiene señalamiento de errores, o sea, la agrupación formal de todos los errores antes de ser discutidos uno a uno, que exigen las reglas 42 y 43 de este tribunal, según hemos resuelto en el caso de *Mercado* v. *Rosado,* 30 D.P.R. 224, pero a pesar de todo discutiremos brevemente varias de las cuestiones importantes que han sido planteadas.

[1] El principal error alegado y el único que en nuestra opinión podría haber cambiado el resultado, fué la actuación de la Junta de Elecciones al descartar o negarse a contar las papeletas en las cuales el votante había marcado y mostrado su preferencia por los *tickets* de dos partidos independientes. En otras palabras, el votante aparecía votando por todos los candidatos de dos partidos legalmente distintos. Sin embargo, en realidad de verdad estos dos partidos habían unido sus candidatos y todos los nombres que aparecían en uno u otro de los *tickets* eran exactamente iguales. La misma persona se elegía votando por cualquiera de los dos *tickets*. Lo esencial, sin embargo, era que en realidad el votante elegía el mismo nombre dos veces, aunque únicamente estaba votando una sola papeleta. Esto, como resolvió la corte inferior, estaba prohibido terminantemente por el artículo 63 (*a*) de la Ley Electoral, según regía en 1923. Este artículo aparece en las páginas 592–593 de las leyes de ese año, y es como sigue:

"Sección 63.—Después de penetrar el elector en la caseta indicará en la papeleta general los candidatos de su elección, en una de las siguientes formas:

"(*a*) Si deseare votar la candidatura íntegra de uno solo de los partidos, hará una cruz o línea de cualquier dimensión y forma, arriba o abajo de la divisa o nombre del partido, o en cualquier espacio en la columna correspondiente a dicho partido, excepto dentro de los espacios que están a la derecha o izquierda de los nombres de los candidatos. De este modo se contará el voto para todos los candidatos cuyos nombres aparezcan en la columna de dicho partido. Si se pone la marca de candidatura íntegra en las candidaturas de más de un partido el voto será nulo."

El razonamiento del apelante es que este artículo ha sido derogado por las leyes de 1924. Se admite que no hubo ninguna derogación expresa. La teoría es que según las leyes de 1923 no podía aparecer ningún nombre solo en más de un *ticket*. Una persona podría entonces no ser un candidato de dos partidos, y la contención es que esta prohibición desapareció en 1924. Según el apelante, en 1923 la inten-

ción era impedir que el mismo nombre fuera votado dos veces y esa intención varió en 1924. Y el apelante pretende sostener su contención citando el "disponiéndose" del artículo 40 de la Ley Electoral como fué enmendada en 1924, página 43 de las leyes de ese año, a saber:

"*Disponiéndose, sin embargo,* que nada de lo contenido en esta Ley se interpretará en el sentido de impedir que una persona sea nombrada como candidato para el mismo cargo por dos o más partidos políticos."

No podemos ver cómo es que el derecho a incluir el mismo nombre en dos *tickets* diferentes afecte a la prohibición contenida en el artículo 63 (*a*), *supra.* Las dos disposiciones citadas no están en conflicto de modo alguno, ni son incompatibles entre sí. Ellas pueden subsistir conjuntamente. Un candidato podría obtener todos los votos del Partido Unionista y del Partido Republicano en 1924, mientras que él no podía obtenerlos en 1923. Esto es muy distinto a decir que un votante puede elegir en una sola papeleta dos *tickets* diferentes. Los *tickets* podrían contener nombres diferentes para algunos de los candidatos y entonces una razón de la prohibición se vería inmediatamente. En esta elección particular es una casualidad que en ambos *tickets* todos los nombres de todos los candidatos sean los mismos. Los inspectores no podían decir por qué partido fué votado el *ticket.* Una doble papeleta es una incongruencia y probablemente sería nula sin una prohibición expresa. No hay duda alguna de que en las elecciones de 1924 el Partido Republicano y el Unionista mantuvieron una existencia legal independiente, aunque nombraron los mismos candidatos.

Es un argumento de segundo orden, quizás, pero para ciertos fines es importante saber para qué partido debe contarse la papeleta. Hemos tenido ante nosotros en otro caso, una reclamación de que cierto partido político obtuvo el segundo lugar en número de votos emitidos en las elecciones de 1924. *Pagán* v. *Towner,* resuelto en febrero 3, 1926, (pág. 1). En las papeletas rechazadas en el presente caso nadie

podía determinar para quién habían de contarse los votos. Existe también la posibilidad de que otros ciudadanos incurrieran en un error semejante al votar por los dos partidos contrarios que también unieron sus candidatos. El argumento principal, sin embargo, es que tenemos en el artículo 63 (a) una prohibición universal. *Ubi lex non distinguit, nec nos distinguere debemus.*

El apelante también alegó haberse cometido error en algunos de los votos impugnados que fueron adjudicados a los contrarios. Según declaró la junta, estas papeletas no pudieron haber afectado al resultado general. No estamos indicando que hubiéramos estado conforme con el apelante en lo demás, sino que la solución no tiene relación práctica alguna.

[2] Nos inclinamos a convenir con la apelada en la corte inferior en que por este auto de *certiorari* sólo podemos revisar los actos ejecutados ante la junta. En el caso del *Pueblo v. Oms,* 34 D.P.R. 455, manifestamos que quizá en ciertos casos podría ofrecerse la prueba testifical, pero la idea que tenemos es que tal prueba testifical sólo podía esclarecer lo que en realidad había tenido lugar ante la junta.

[3, 4] También convenimos con la apelada en que la actuación de la junta al negarse a abrir las papeletas emitidas en ciertos precintos era una cuestión dentro de su sana discreción, y a falta de algo que indique haberse cometido alguna irregularidad, la discreción de dicha junta al no abrir dichas papeletas no puede ser revisada. La mera petición del candidato vencido de que todas las papeletas sean examinadas no era suficiente.

Las demás cuestiones levantadas eran de procedimiento y relativamente sin importancia.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente Sr. del Toro no intervino en la resolución de este caso.