HORACE MANN TOWNER, GOBERNADOR DE PUERTO RICO, peticionario, *v.* LA CORTE DE DISTRITO DE SAN JUAN.

No. 642.—*Sometido:* Febrero 12, 1929. *Resuelto:* Abril 26, 1929.

Hon. Attorney General *James R. Beverly* y *Tomás Torres Pérez,* abogados del peticionario; *J. Valdejulli,* a nombre de los interventores; *Bolívar Pagán,* como *amicus curiae.*

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Al comenzar esta opinión, permítasenos decir que estuvimos plenamente convencidos durante la vista de este caso y aún lo estamos, de que la petición radicada por el Procurador General ante esta corte no contenía reflexión personal alguna contra las actuaciones de los jueces de la Corte de Distrito de San Juan al ordenar la continuación del *status quo* originalmente creado por el procedimiento especial de *certiorari* provisto por el estatuto, para impugnar las elecciones de Barceloneta. El Procurador General meramente era de opinión que el hacer que el Gobernador suspendiera la expedición de los certificados de elección produciría un estado anárquico en Barceloneta. En su uso estricto, la palabra

"anárquico" significa la ausencia o la insuficiencia de gobierno y el Procurador General trataba de decir, acertada o equivocadamente, que Barceloneta quedaría sin tal gobierno.

Decir con motivo de una orden expedida por una corte que no habría gobierno en un municipio, podría concebirse como una razón por la cual este tribunal debería expedir un auto de *certiorari*. Sin embargo, consideraremos discrecionalmente el recurso en este caso para aclarar algo más rápidamente que por medio de un recurso de apelación, la confusión o duda existente en una comunidad importante debido a las actuaciones de una corte. Esto sería especialmente cierto si estuviésemos convencidos de que las cuestiones suscitadas son de interés general y propensas a afectar otros litigios similares. En general, las contiendas electorales deben ser resueltas con prontitud, pero hay que resolverlas cuidadosamente.

■■ Consideraremos someramente la cuestión del juramento de la petición. En último caso daríamos oportunidad al Procurador General para enmendar, si fuere necesario. Por otra parte, eliminando la cuestión de si existe o no una falta de gobierno, los hechos necesarios para la decisión de este caso son indisputables. La contestación los admite. Cuando una contestación admite los hechos esenciales, pueden considerarse como renunciadas las objeciones al juramento. En un solo escrito, la demandada se opuso al juramento, excepcionó la demanda y contestó. Tenemos la idea de que tal vez técnicamente, para atacar la falta de juramento debió haberse radicado una moción de eliminación por separado. Si bien la frase es alto tirante, la suficiencia del juramento, después de haberse radicado las alegaciones, puede ser sometida a un examen pragmático. En tanto en cuanto el juramento se refiere a cuestiones *aliunde,* no creeremos necesarios considerarlas.

La Corte de Distrito de San Juan decidió una petición de *certiorari* contra los allí recurrentes. Resolvió que la acción de la Junta de Elecciones había sido correcta. Al

final de la opinión emitida por la corte inferior, se resolvió que, de conformidad con el artículo 89 de la Ley Electoral, unas elecciones, al ser impugnadas, no podían considerarse como determinadas definitivamente hasta que hubiera una sentencia final; y que, por consiguiente, el *status quo* establecido por el *certiorari* debía conservarse. La actuación original de la corte en respuesta a la sública de la petición, ordenó al Gobernador de Puerto Rico, *pendente lite,* que no entregara los certificados de elección a los contendientes de los peticionarios, y también disponía que se notificara al Gobernador con copia de la orden.

De acuerdo con el artículo 188 del Código de Enjuiciamiento Civil, una sentencia es la decisión definitiva sobre los derechos de las partes en un pleito o procedimiento. La sentencia dictada en este caso contra los peticionarios era o debió ser tal sentencia definitiva. Si no era una sentencia definitiva, no solamente era inapelable, sino que cuando ya dejó de ser apelable con motivo del tiempo transcurrido o debido a haber sido confirmada, por su forma, si no por su substancia, era ejecutiva. Los jueces de la Corte de Distrito de San Juan, al dictar su sentencia, no tenían derecho a asumir como parte de la sentencia que las partes perdidosas en realidad apelarían. Una apelación era solamente una probabilidad. Las partes que perdieron el litigio podían haber aceptado la sentencia. Al dictar una sentencia y al limitar a la vez sus efectos, la Corte de Distrito de San Juan se excedió en sus facultades o erró fundamentalmente, si su intención fué resolver la controversia entre las partes. La corte no necesitaba anticipar la posibilidad de una apelación. Las decisiones se fundan en hechos sucedidos y en controversias que realmente han surgido.

Convenimos con los querellados en que el espíritu de la sección 89 de la Ley Electoral fué suspender la actuación de la Junta de Elecciones al radicarse un procedimiento de

*certiorari* para impugnar una elección. Este recurso de *certiorari* es el único remedio judicial existente dado específicamente a los candidatos para impugnar el resultado de unas elecciones. La parte pertinente de la sección 89 dice así:

"Y *disponiéndose, además,* que el resultado del escrutinio de unas elecciones, según se declarare por la Junta Insular de Elecciones, y publicare por el Superintendente General de Elecciones, será definitivo, a menos, que fuere impugnado por *certiorari* u otro procedimiento legal autorizado, que se interponga dentro de quince días después de la fecha de la publicación del resultado de ese escrutinio ante una corte de competente jurisdicción, y por la presente se autoriza en esos casos el procedimiento de *certiorari* en la Corte de Distrito de San Juan. . . ."

La intención de la Legislatura fué conceder un remedio rápido ante las cortes a las personas contra quienes la Junta Insular de Elecciones dictara su decisión.

Por tanto, en el presente caso la Corte de Distrito de San Juan actuó muy bien dentro de su jurisdicción al expedir una orden dirigida al Gobernador para que se abstuviera de expedir los certificados de elección mientras se substanciaba el litigio.

Sin haber sido traído el Gobernador al pleito, la Corte de Distrito de San Juan no adquirió jurisdicción sobre su persona, y no podía obligarlo en su sentencia. Es doctrina casi universal que cuando puede dictarse una sentencia u orden contra una persona, ésta debe ser traída ante la corte mediante notificación o aviso de alguna clase. *Windsor* v. *McVeigh,* 93 U. S. 274; *Pennoyer* v. *Neff,* 95 U. S. 741; *Reynolds* v. *Stockton,* 140 U. S. 254, el que aprueba y cita del caso de *Munday* v. *Vail,* 34 N.J.L. 418, en que la corte dijo:

"Es una proposición establecida por un cúmulo de autoridades que una corte no puede salirse de la esfera señaládale, y que su actuación es nula en relación con personas ajenas a sus procedimientos."

■ Al discutir el derecho del Gobernador a radicar un *certiorari* ante este tribunal, los interventores, quienes representaban a las personas que perdieron las elecciones, dijeron en su alegato que el Gobernador era un extraño a los procedimientos en la corte de distrito.

Cuando una corte ordena a una persona que haga o que no haga una cosa y se le notifica de ello, surge una obligación de parte suya, y tiene suficiente interés o ha sido suficientemente perjudicada para que pueda revisar mediante *certiorari* las actuaciones de la corte, si ésta no procede de acuerdo con la ley. *Delgado* v. *Corte de Distrito de Mayagüez,* 8 D.P.R. 509; *Amadeo* v. *Rossy,* 21 D.P.R. 350. El caso que aquí se presenta es bien extraordinario.

Al tener una persona conocimiento real puede comparecer ante la corte para destruir la supuesta sentencia u orden dictada contra ella. Tal vez hubiese sido mejor dar los pasos necesarios ante la corte de distrito para corregir estos defectos, pero discrecionalmente, debido a la forma en que en realidad se desarrolló el procedimiento, haremos caso omiso de esta falta.

Al tiempo en que se radicó este *certiorari* no se había interpuesto recurso de apelación contra lo actuado por la corte de distrito. Los autos certificados, sin embargo, demuestran que después se interpusieron recursos de apelación. Discutir el efecto de una apelación para suspender la expedición de un certificado es entrar en una cuestión que no está ante nosotros, y por eso dejaremos de considerarla.

Bajo las circunstancias reseñadas, aquella parte de la sentencia de la corte de distrito que prohibía al Gobernador expedir certificados de elección, *debe ser anulada,* sin que de otro modo se destruyan los efectos de la sentencia. *Se devuelve* el caso a la corte de distrito para ulteriores procedimientos no incompatibles con esta opinión.

El Juez Presidente Señor del Toro no intervino.