RAMÓN TORRES RAMOS, F. MARIANI, R. CASANOVA, R. ROSADO, R. PÉREZ VIERA, R. SURIA, R. MARTÍNEZ TIRADO, M. OLMO, D. DÍAZ CAMACHO y JUAN NAVARRO, demandantes-apelantes-apelados, *v.* JUNTA INSULAR DE ELECCIONES, demandada, y JUAN DE LA TORRE, L. MOLINA MEDINA, F. REYES, M. CABALLERO VÉLEZ, E. COLLAZO, M. COLÓN, A. SOLER, L. DE JESÚS, F. SANTANA y A. DE LEÓN, Interventores-apelados-apelantes.

No. 4889.—*Sometido:* Abril 1, 1929. *Resuelto:* Enero 17, 1930.

———

* Véase el prefacio.

430

*J. Valldejuli,* abogado de los demandantes-apelantes; *Attorney General Hon. James R. Beverley y Tomás Torres Pérez, Sub Procurador,* abogados de la demandada; *Bolívar Pagán,* abogado de los interventores.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Ramón Torres Ramos, Fernando Mariani, Ramón Casa-

nova, Ramón Rosado, Ramón Pérez Viera, Rafael Suria, Ramón Martínez Tirado, Mariano Olmo, Diego Díaz Camacho y Juan Navarro, presentaron ante la Corte de Distrito de San Juan, una petición de auto de *certiorari* contra la Junta Insular de Elecciones, alegando que ellos, los peticionarios, son electores capacitados que votaron en las elecciones en Puerto Rico el 6 de noviembre de 1928, en el precinto electoral de Barceloneta, y que en esas elecciones los peticionarios fueron puestos en el ticket electoral como candidatos de la Alianza Puertorriqueña, para Alcalde de Barceloneta el primero, y los demás para miembros de la Asamblea Municipal de Barceloneta, frente a otra candidatura del partido socialista constitucional; que la Junta Insular de Elecciones hizo el escrutinio general de las efectuadas en Puerto Rico, y como resultado de las de Barceloneta, proclamó electos a Juan de la Torre, para Alcalde, y Luis Molina, Felipe Reyes, Miguel Caballero, Eugenio Collazo, Martín Colón, Acisclo Soler, Lorenzo de Jesús, Fernando Santana y Alfonso de León, para miembros de la Asamblea Municipal de Barceloneta; que al hacer el escrutinio general en el colegio número 4 de Barceloneta, declaró válidas seis papeletas de voto, que venían marcadas con signos de identificación y las adjudicó a los candidatos socialistas; y en el del colegio No. 5, tres papeletas en la misma forma, haciendo igual adjudicación; y lo mismo en los colegios No. 7, cinco papeletas, No. 9, veinte y siete papeletas con doble cruz, No. 11, cinco papeletas con doble cruz, No. 13, cinco papeletas, No. 15, una papeleta; marcadas con dos cruces, una bajo el hacho y otra bajo el elefante; y todas fueron adjudicadas a los candidatos del partido Socialista-Constitucional; que Oscar Chiesa que fué juez en el colegio No. 5 precinto de Barceloneta, representando al partido Alianza Puertorriqueña, dos días después de las elecciones publicó en el diario "El Tiempo," órgano del partido Socialista Constitucional, un artículo titulado "Se acabó el chupón" que era indicatorio de que Chiesa al

tiempo de desempeñar sus funciones como juez de aquel colegio se hallaba en combinación con el partido Socialista Constitucional, y en ese colegio donde esperaba el partido Alianza una mayoría de 80 votos, tuvo su contrario una mayoría de 11 votos; que asimismo fueron contadas por los jueces e inspectores de distintos colegios del precinto de Barceloneta, en favor del partido Socialista Constitucional, 152 papeletas marcadas con dos cruces, una bajo el hacho y otra bajo el elefante, detallando la demanda los números y colegios; que la resolución de la Junta Insular de Elecciones es errónea e ilegal, y los demandantes fueron perjudicados por ella; que en el colegio No. 15 de Barceloneta hubo irregularidad y fraude, porque la Alianza, según información y creencia de los peticionarios obtuvo una mayoría de más de 60 votos, que en vez de serle adjudicados se le dió a sus adversarios. Sobre estas bases pidieron un auto de *certio-rari* contra la Junta Insular de Elecciones para que remitiera los documentos pertenecientes a los diversos colegios, y los demás relacionados con el precinto de Barceloneta, y procediera la corte a hacer un escrutinio judicial.

La corte se reunió *in bank,* con sus tres jueces, para oír a las partes acerca de la procedencia del remedio, citando a ese efecto. Intervinieron en forma legal los candidatos que aparecían electos. Y éstos, y la Junta demandada presentaron mociones para declarar sin lugar la demanda, anulando la orden expedida e imponiendo las costas a los peticionarios. Las mociones se fundaron en falta de hechos suficientes, falta de jurisdicción de la corte para anular las resoluciones de la Junta Insular en adjudicación de papeletas protestadas, validez de las papeletas marcadas con doble cruz, y falta de poder en la Junta Insular y en las cortes para anular papeletas declaradas válidas de común acuerdo por las juntas locales de colegios electorales.

Sobre estas mociones se dictó la resolución que es objeto de apelación en su totalidad por los peticionarios, y de la

que también apelaron los interventores en cuanto a las costas y a retención de los certificados. Este último particular se halla decidido en otra resolución de este Tribunal (*Towner v. Corte de Distrito,* 39 D.P.R. 505).

La Corte de Distrito de San Juan, en la citada resolución, después de un profundo estudio de las cuestiones planteadas declaró sin lugar la petición de auto de *certiorari,* sin especial condena de costas.

De los cuatro señalamientos de error que por los peticionarios y apelantes, se establecen en el alegato, empezaremos por los que requieren menos discusión. Así el tercer error, cuyo señalamiento se hace en esta forma:

"Tercer error.—Haber declarado que la alegación de fraude establecida en la demanda no es suficiente."

Con cuyo señalamiento se relaciona íntimamente el cuarto, que, en su texto es así:

"Cuarto error.—Haber declarado que el hecho de haber un inspector de colegio, representante de la Alianza en los comicios, publicado un artículo contra el partido que representara, no es un hecho suficiente para presumir la parcialidad de dicho representante."

■ Ante todo es procedente declarar aquí que el recurso de *certiorari* que da la Ley Electoral no tiene el alcance que por la parte apelante se le ha querido dar. No tiene este remedio los mismos efectos que cualquier acción para anular determinados actos; ni ése es el sentido de la jurisprudencia de Puerto Rico.

En el "Disponiéndose" de la Sección 17 de la Ley No. 1, de 18 de junio de 1924, que enmienda la Sección 89 de la ley anterior se lee:

"Y disponiéndose, además, que el resultado del escrutinio de unas elecciones según se declarare por la Junta Insular de Elecciones y publicare por el Superintendente General de Elecciones, será definitivo, a menos que fuera impugnado por certiorari u otro procedimiento

legal autorizado . . . . y por la presente se autoriza en esos casos el procedimiento de certiorari en la corte de distrito de San Juan.''

¿Quiere esto significar que el *certiorari* ha sido cambiado en su esencial e íntima naturaleza, y convertido en una acción ordinaria? No encontramos en la ley nada que así lo estatuya expresamente, o que permita una interpretación en ese sentido.

Como consecuencia debemos declarar que el posible fraude cometido por un inspector o juez de mesa electoral, sin que se protestara su comisión, y sin que en él haya tenido, directa o indirectamente, nada que ver la Junta Insular de Elecciones, no es, no puede ser, de acuerdo con la ley, parte ni objeto de un recurso de *certiorari* que se da contra los procedimientos de aquella junta en el escrutinio.

De todas formas, en la alegación de fraude que aparece en la petición de *certiorari*, no resulta otra cosa que la con- ·clusión o juicio de los peticionarios acerca de que ''hubo un fraude.'' Y ésta no es alegación suficiente, ya que no ofrece hecho alguno constitutivo de tal fraude. Tomemos, a este fin, las propias palabras de la corte de distrito, que expresan perfectamente el concepto.

''(3) Cierto es que cuando existe fraude o se cometen graves infracciones de la ley, las cortes pueden y deben intervenir; pero una alegación de fraude debe ser clara, concreta y específica. No basta con alegar el fraude en términos generales y como una conclusión de hecho derivada de una mera creencia o información. Debe haber una alegación de hecho específica que ponga al Tribunal en condiciones de poder determinar, dando como cierta dicha alegación, la existencia real y efectiva del fraude cometido. En la demanda sólo se alega (hecho 14) 'que en el colegio número 15 de Barceloneta, precinto electoral de Barceloneta, hubo irregularidad y fraude, toda vez que la Alianza Puertorriqueña, según información y creencia de los peticionarios obtuvo una mayoría de más de 60 votos en dicho colegio y la cual en vez de serle adjudicada contándole dichos votos, le fué quitada adjudicándosela al partido Socialista Constitucional.''

''Pero no se dice en qué basan su creencia los demandantes, ni cuáles son sus fuentes de información, ni a virtud de qué actos no

se les adjudicaron los votos que dicen obtuvieron de mayoría. Si hubo fraude ¿quién lo realizó? ¿Y cómo se realizó?

"Los inspectores y secretarios de los colegios electorales son funcionarios debidamente nombrados por la Junta Insular a propuesta de los partidos que toman parte en la contienda electoral. Les cobija la presunción de que sus actuaciones fueron conformes a la ley, y para tacharlas de fraudulentas debe hacerse la alegación específica del acto fraudulento cometido. Ellos juran desempeñar fielmente su deber, y mientras no se alegue concretamente en qué forma faltaron al mismo, debe presumirse que lo cumplieron leal y eficazmente. Es en esta confianza en el ejercicio del deber, y aprendiendo a virtud de sus éxitos o fracasos, que se asientan y funcionan debidamente las democracias. Por otra parte, si hubo fraude en el escrutinio parcial celebrado por las Juntas de Colegio, no es este recurso de certiorari el remedio adecuado para dilucidar tal cuestión, porque tales organismos no son parte en este procedimiento, que sólo tiene por fin revisar las actuaciones de la Junta Insular de Elecciones."

No es preciso decir más, ya que las declaraciones son tan completas y adecuadas.

La parte apelante insiste en que la alegación de que Rodríguez Chiesa publicó, dos días después de las elecciones un artículo titulado "Se acabó el chupón," en el periódico órgano de los que habían sido sus adversarios políticos, demuestra la existencia del fraude, deducido de que aquel ciudadano se hallaba ya de acuerdo con el partido político adversario del que le nombró, y pudo realizar, o permitir, el fraude. Nos parece que los apelantes van, en su juicio, muy lejos. No sabemos cuándo se produjo en el juez o interventor del partido Alianza Puertorriqueña, el fenómeno que pudiéramos llamar de patología política, de convertirse en adversario de los que le nombraron para representarles. Pero la indicación es de que si surgió, fué después de las elecciones, que es cuando publicó el artículo. Y ello no da pie a la creencia de que hubiera un fraude, ni nosotros hemos de dejar volar la imaginación, allí donde nuestro juicio debe descansar en el sólido terreno de la ley y los hechos.

Niégase así la ocurrencia de los errores señalados bajo los números tercero y cuarto.

■ Se enuncia el segundo señalamiento en esta forma:

"Segundo error.—Haber declarado la corte inferior que las actuaciones de los inspectores y secretarios de las juntas de colegios no pueden ser investigadas por el tribunal."

En efecto; la corte hizo esa declaración, y actuó de conformidad con ella. No hubo error alguno en hacerlo así. El *certiorari* que se da por la sección de la ley a que antes nos referimos, se da contra determinadas actuaciones de la Junta Insular de Elecciones; y como afirma la corte *a quo* en su resolución este tribunal tiene ya sentada doctrina acerca del particular. En el caso *Diez de Andino et al.* v. *Junta Insular de Elecciones*, 35 D.P.R. 99, se dijo:

"Nos inclinamos a convenir con la apelada en la corte inferior en que por este auto de certiorari sólo podemos revisar los actos ejecutados ante la junta. En el caso del Pueblo v. Oms. 34 D.P.R. 455, manifestamos que quizá en ciertos casos podría ofrecerse la prueba testifical, pero la idea que tenemos es que tal prueba testifical sólo podía esclarecer lo que en realidad había tenido lugar ante la junta."

■ Como primer error se ha señalado el siguiente:

"Primer error.—Haber declarado que la demanda de los peticionarios no tiene hechos suficientes para constituir la causa de acción que se persigue."

Creemos que los apelantes se equivocan al sostener con todo empeño que lo que ellos hicieron fué ejercitar una acción para impugnar las elecciones. Claro es que en su finalidad el *certiorari* que ellos piden vendría a darles algo como la impugnación de una elección. Pero no estamos conformes con que la acción sea la misma, ni aun con que los resultados de un *certiorari* y los de otra acción, abierta, franca y directa para impugnar unas elecciones, sean idénticas. En un procedimiento de *certiorari*, la base, el modo de proceder, la esfera de acción de la corte, y la extensión de su autoridad al resolver, son diferentes de los de una acción ordinaria.

Verdaderamente, en la petición se alegó que la Junta Insular había adjudicado erróneamente a los candidatos socia-

listas 52 papeletas protestadas; y que los jueces del precinto de Barceloneta habían adjudicado a los mismos candidatos, ilegalmente 152 papeletas o votos marcados con doble cruz.

En cuanto a la resolución de los jueces de colegios, de acuerdo entre ellos, sin oposición o protestas, nada tiene que hacer tribunal alguno, en procedimiento de *certiorari*. Los jueces de los dos partidos resolvieron, y no vemos cómo podría levantarse ahora cuestión acerca de lo resuelto. Pero, aparte de esto, el *certiorari* no se da contra los actos de los jueces de colegios, que, a más, vienen libres de protesta; se da contra las resoluciones de la Junta Insular, con las limitaciones que crea la ley.

Reducida la cuenta a las 52 papeletas o votos adjudicados por la Junta Insular, veamos cómo lo ha decidido la corte. En su resolución leemos lo que sigue:

"El primer error no existe. Si, como alegan los peticionarios, la mayoría adjudicada a los candidatos triunfantes, fué de 121 votos, descontando los 52 votos adjudicados por la Junta Insular demandada, todavía tendrían mayoría de 69 votos. Un simple cálculo aritmético nos lleva a esta conclusión. De suerte que no varía en ninguna forma el resultado de la elección el escrutinio hecho por la Junta Insular de Elecciones. La concesión de un auto de certiorari para revisar esta actuación de la demandada, sería ineficaz y de resultados puramente académicos. Ningún fin práctico tendría su expedición. El remedio de certiorari que la ley electoral concede, debe ejercitarse cuando hay que corregir algún error de ley o infracción de procedimiento que haya causado daño o perjuicio al peticionario, pero no cuando la actuación de la Junta Insular de Elecciones en nada afecta y varía el resultado de un escrutinio ya hecho por la Junta de Colegio."

Estamos de completo acuerdo con esas declaraciones. Y siendo así, no encontramos el error señalado.

Podemos resolver aquí la apelación de los interventores en cuanto a la no imposición de costas. Esta es materia en la que tiene gran peso la discreción de la corte; y si ella no ha encontrado no sólo temeridad, sino suficiente

temeridad para imponer las costas, sería preciso que se nos demostrara que abusó de su discreción; y no encontramos la demostración satisfactoria de tal abuso.

*Debe confirmarse la sentencia apelada, en lo que de la misma se halla subsistente, o sea, con la excepción de la orden de retención de los certificados, que ha sido resuelta en otro caso ante este tribunal.*