FRANCISCO CARRILLO PACHECO, demandante y apelante, *v.* JUNTA INSULAR DE ELECCIONES, compuesta por CHARLES H. TERRY, Presidente, FRANK MARTÍNEZ, BOLÍVAR PAGÁN y LEOPOLDO FIGUEROA, demandada y apelada; y FRANCISCO PORRATA DORIA, Interventor y apelado.

Núm. 7616.—*Sometido:* Diciembre 8, 1938. *Resuelto:* Junio 8, 1939.

*Dubón & Ochoteco,* abogados del apelante; *Hon. Procurador General B. Fernández García* y *E. Campos del Toro, Procurador General Auxiliar,* abogados de la Junta apelada; *Bolívar Pagán,* abogado del interventor y apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

Francisco Carrillo Pacheco, justificando su pleito en el único fundamento de que era un elector capacitado y votante en las elecciones últimas celebradas, atacó a virtud de este

recurso de *certiorari* la elección de Francisco Porrata Doria como Alcalde de Guayama. Uno de los jueces de la Corte de Distrito de San Juan, donde se presentó la petición, ordenó se librara el auto de *certiorari*. Posteriormente el peticionario solicitó permiso para enmendar su solicitud. La Junta Insular de Elecciones compareció, se opuso a la enmienda y pidió que el auto fuera anulado. La Corte de Distrito de San Juan *in bank* resolvió ambas cuestiones a favor de la Junta Insular de Elecciones.

La petición original, expresada algo lacónicamente, narró que en las elecciones celebradas el 3 de noviembre de 1936 Francisco Porrata Doria era candidato de la Coalición para el cargo de Alcalde de Guayama y Enrique J. Anglade era el candidato del Partido Liberal; que el Superintendente de Elecciones publicó el hecho de que como resultado de las elecciones la Coalición tenía una pequeña mayoría (que ascendía a menos de 32 votos); que de las personas que habían votado en dichas elecciones 17 no aparecían en las listas electorales con derecho al voto; que una de ellas había sido convicta de delito grave, tres eran menores de edad y once no eran ciudadanos americanos. El peticionario solicitaba que la Junta de Elecciones cancelara estos 32 votos.

En apelación se señalan los siguientes errores:

"*Primer error:* Erró la Corte de Distrito del Distrito Judicial de San Juan, Puerto Rico, al declarar que el demandante apelante carecía de personalidad para incoar el presente recurso de *certiorari*.

"*Segundo error:* Erró la Corte de Distrito del Distrito Judicial de San Juan, Puerto Rico, al decretar la eliminación de la Petición Enmendada radicada el 10 de febrero de 1937.

"*Tercer error:* Erró la Corte de Distrito del Distrito Judicial de San Juan, Puerto Rico, al declarar que la petición original en el caso de epígrafe no aduce hechos constitutivos de causa de acción.

"*Cuarto error:* Y por último, erró la Corte de Distrito del Distrito Judicial de San Juan, Puerto Rico, al dictar sentencia contra el demandante anulando el auto de *certiorari* expedido, y en su consecuencia declarando sin lugar la petición de *certiorari* en este caso."

██ La Corte de Distrito de San Juan, entre otras cosas, resolvió que Francisco Carrillo Pacheco no era candidato para ningún cargo ni tenía otro interés en el resultado de las elecciones que el de un ciudadano y que por tanto no tenía derecho a radicar la petición de *certiorari*.

Independientemente de esto, somos del criterio de que la sentencia debe ser confirmada, toda vez que los hechos y las cuestiones envueltas en este procedimiento no caen dentro de la disposición legal en que descansa el apelante, o sea la sección 89, que habla del recurso de *certiorari* en casos electorales. (Ley Núm. 79 de 1919, pág. 531, según fué enmendada por la Núm. 1 de 1924 (Sesión Extraordinaria de ese año, pág. 3)).

La sección 89 de dicha ley lee así:

"La Junta Insular de Elecciones practicará el escrutinio de la documentación de las elecciones, usando las listas de votantes y hojas de cotejo empleadas en dichas elecciones, que fueren enviadas al Superintendente General de Elecciones por las juntas locales de elecciones en calidad de tales documentos como sigue:

"Dicha junta empezará dicho escrutinio con la documentación del colegio número uno del primer precinto del primer distrito representativo y continuará en el mismo orden numérico de distritos representativos hasta que el escrutinio de todos los colegios de cada uno de dichos distritos, haya sido terminado, a menos que previamente se acuerde unánimemente seguir otro orden.

"Al considerar la documentación de cada colegio electoral para su escrutinio, dicha junta examinará primeramente todas las papeletas protestadas constantes en la hoja de cotejo perteneciente a dicho colegio, y contará o rechazará aquellas papeletas según lo que a su juicio se requiera por la ley, y con el fin de llevar a cabo esta disposición y requisito, dicha junta podrá abrir y examinar el contenido de cualquier sobre o paquete correspondiente a las elecciones en dicho colegio electoral, y entonces pondrá otra vez el contenido en el sobre o paquete en que se encontraron, sellará de nuevo dicho paquete o sobre y hará una declaración breve sobre el mismo, firmada por todos los miembros de la junta que estuvieren presentes, exponiendo la causa por la cual dicho sobre o paquete fué abierto, y cuáles fueron las papeletas o documentos encontrados en el mismo. La antedicha junta sumará entonces al voto total depositado y contado para cada

candidato en un colegio electoral, según conste en la hoja de cotejo, el número total de votos de papeletas protestadas contadas por ella para cada uno de los candidatos. Dichos totales agregados se tomarán como el verdadero voto total de cada uno de los candidatos votados en cada colegio electoral y dicho voto total verdadero de cada candidato en todos los colegios electorales, en el cual fué votado en unas elecciones, se tomará como el total de todos los votos recibidos por dicho candidato en las elecciones a las cuales se refieren; *Disponiéndose,* que la Junta Insular de Elecciones corregirá todo error aritmético que encontrare en una hoja de cotejo, y contará la dicha hoja de cotejo en la forma corregida; *Disponiéndose, además,* que la Junta Insular de Elecciones, a petición de cualquier miembro de dicha junta, contará el número de personas que votaron en un colegio electoral, según resulte de sus listas de votantes, y cambiará la entrada en su hoja de cotejo en aquel particular, de manera que corresponda con el resultado de dicho recuento; *Disponiéndose, además,* que si hubiere contradicción alguna en las entradas de una hoja de cotejo (ya sea en la forma en que fué transmitida por la junta de colegio, o según se hubiere corregido por la Junta Insular de Elecciones), entre el número de personas que votaron, según resulta de las listas de votantes y el número de papeletas encontradas en la urna del colegio electoral al cual corresponde la hoja de cotejo, o entre el número de papeletas encontradas en la urna y el número de papeletas distribuídas, según consta en el sumario de dicha hoja de cotejo, la Junta Insular de Elecciones, si esa diferencia es suficiente por sí sola, o en combinación con otra diferenci.. referente al voto para un mismo candidato afectare su elección, deberá recontar todas las papeletas de ese colegio electoral, corregir su hoja de cotejo de acuerdo con el resultado de ese recuento, y adoptar dicha hoja de cotejo corregida como la hoja de cotejo oficial de ese colegio electoral; *Disponiéndose, sin embargo,* que la Junta Insular de Elecciones endosará en dicha hoja de cotejo, una declaración firmada por todos sus miembros presentes, haciendo constar los cambios en esa forma hechos por ella, y las razones por las cuales se hicieron estos cambios. *Y disponiéndose, además,* que el resultado del escrutinio de unas elecciones, según se declarare por la Junta Insular de Elecciones y publicare por el Superintendente General de Elecciones, será definitivo, a menos que fuere impugnado por *certiorari* u otro procedimiento legal autorizado, que se interponga dentro de quince días después de la fecha de la publicación del resultado de ese escrutinio ante una corte de competente jurisdicción, y por la presente se autoriza en esos casos el procedimiento de *certiorari* en la corte de distrito de

San Juan; *Y disponiéndose, además,* que la Junta Insular de Elecciones repondrá el contenido de todos los sobres y paquetes abiertos por ella con el fin de contar o recontar papeletas, en el mismo sobre o paquete en que se encontraron; resellará ese sobre o paquete, y pondrá en el mismo una declaración escrita y firmada por todos los miembros de la junta que estuvieren presentes, manifestando la razón por la cual dicho sobre o paquete fué abierto por ella, y que todo el contenido encontrado en dicho sobre o paquete fué repuesto en el mismo.''

La idea del apelante aparecía ser que con anterioridad a 1931 no existía ley general de elecciones que abarcara los hechos del presente caso y que por tanto había que acudir a la ley de 1919, según fué enmendada en 1924, y que contenía la sección 89, supra.

La ley de 1931 (Núm. 72, pág. 449) que es similar a la ley de 1906, provee:

"Sección 17.—Esta ley no afectará a las demandas, procedimientos de *quo warranto* o *certiorari* y demás impugnaciones electorales autorizados por las leyes vigentes."

Somos del criterio que la sección 89 sólo incluye cuestiones que realmente suceden ante la Junta Insular de Elecciones y que el recurso de *certiorari* mencionado hacia el final de la sección 89 no cubre las impugnaciones hechas en el presente recurso. La sección 89 no contiene disposición alguna que permita un ataque a la suficiencia de las elecciones. Que esa sección no abarca un procedimiento como el presente se desprende de nuestras decisiones en *Diez de Andino* v. *Junta Insular de Elecciones,* 35 D.P.R. 99; *Roca* v. *Junta Insular de Elecciones,* 35 D.P.R. 642; y quizá de otros casos citados por la corte inferior. Aún si antes de 1931 el recurso de *certiorari* mencionado en la sección 89 podía dudosamente favorecer al apelante, creemos que fué clara la intención de la Legislatura hacer que la nueva ley de 1931 cubriera los casos de elecciones disputadas y excluir la sección 89. La Ley Núm. 72 de 1931 (pág. 449) cubre todos los detalles relativos a la forma de atacar una elección y es el remedio exclusivo.

*Debe confirmarse la sentencia de la Corte de Distrito de San Juan.*

Los Jueces Sres. Presidente Del Toro y Asociado De Jesús no intervinieron.